ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ESTANCIAS DE SIERRA MAESTRA CORP. Recurrido v. LUZ DELIA CANDELARIO RIVERA Y OTROS Peticionarias | KLAN202500534 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Añasco Caso Núm.: AÑ2023CV00103 Sobre: Acción de Deslinde y otros |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de agosto de 2025.

Comparece la parte demandada y peticionaria, conformada por las hermanas Luz Delia Candelario Rivera y Providencia Candelario Rivera. Solicitan nuestra intervención para revocar el dictamen intitulado *Sentencia* emitido el 12 de mayo de 2025, notificado el día 14, por el Tribunal de Primera Instancia, Sala de Añasco (TPI). En el referido pronunciamiento, el TPI rechazó la defensa de usucapión de las peticionarias; y declaró con lugar la acción civil instada por la parte demandante y recurrida, Estancias de Sierra Maestra Corp. (Sierra Maestra). En consecuencia, reconoció la titularidad del recurrido sobre una franja de terreno de 20 metros lineales, de conformidad con las constancias registrales inscritas.

Acogemos el recurso de epígrafe como un auto discrecional de *certiorari* por ser el recurso adecuado, conforme dispone la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V, y su jurisprudencia interpretativa.[1] Es decir, debido a que <u>no se finiquitaron todas las controversias entre las partes del pleito</u> y el TPI omitió concluir expresamente que no existía razón para posponer dictar sentencia, hasta la resolución total del pleito, la

---

[1] Véase, *Rosario et al. v. Hosp. Gen. Menonita, Inc.*, 155 DPR 49, 56-58 (2001); *García v. Padró*, 165 DPR 324, 332-334 (2005); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 95-96 (2008); *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129; 215 DPR __ (2024).

Número Identificador

SEN2025_____

determinación recurrida no adquirió la finalidad exigida por las normas procesales. Por consiguiente, la decisión judicial no se considera una sentencia parcial final apelable; sino una resolución interlocutoria, revisable mediante un recurso de *certiorari*. No obstante, en aras de una solución justa, rápida y económica, conservamos la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

**I.**

La causa del epígrafe se inició el 27 de abril de 2023, ocasión en que Sierra Maestra presentó una *Demanda* en contra de las hermanas Candelario Rivera, con el fin de solicitar una acción de deslinde y reivindicación, en relación a un predio colindante, que las demandadas presuntamente ocuparon, obstruyeron el acceso al camino público y en el que construyeron de manera extralimitada parte de una estructura.[2] A esos fines, Sierra Maestra solicitó al TPI que ordenara que se le permitiese realizar el procedimiento de mensura y deslinde, al que se negaban las demandadas; la posesión y reivindicación del predio de terreno en controversia; así como el pago del terreno en el que se construyó parte de un inmueble comercial, lo cual valoraron en $300.00 por metro cuadrado.[3]

Las hermanas Candelario Rivera incoaron *Contestación a Demanda* el 7 de julio de 2023.[4] En esencia, negaron las alegaciones en su contra. Afirmaron que la estructura comercial había estado en su propiedad por más de cincuenta años. En la alternativa, interpusieron la defensa de usucapión. Por igual, sostuvieron que la finca de Sierra Maestra tenía

---

[2] Apéndice, págs. 13-15.

[3] Acerca de esta última alegación pecuniaria no obra evidencia en el expediente. A pesar de la decisión judicial a favor de Sierra Maestra, el TPI no adjudicó cuantía alguna sobre el valor del predio en el que se construyó de manera extralimitada. Como se sabe, en los casos en que una construcción se realiza en un terreno propio, pero excede los linderos; esto es, que parte de lo edificado quede en suelo ajeno, aplica la doctrina civilista española de accesión a la inversa por construcción extralimitada. En ésta, deben concurrir los siguientes requisitos: (1) que quien pretenda la accesión invertida sea el titular de lo construido; (2) que el edificio se haya construido en parte en suelo ajeno y en parte en suelo que pertenezca al edificante; (3) que las dos partes del suelo formen con el edificio un todo indivisible; (4) que el edificio, unido al suelo del edificante, tenga una importancia y un valor superior a los del suelo invadido, y (5) que el edificante haya procedido de buena fe. Véase, *Laboy Roque v. Pérez y Otros*, 181 DPR 718, 738 (2011).

[4] Apéndice, págs. 21-24.

acceso a la vía pública. Imputaron temeridad al demandante y reclamaron $3,000.00 en concepto de honorarios de abogado.

Luego de varios incidentes judiciales y extrajudiciales, las partes coincidieron en la existencia de controversia con los linderos de las fincas colindantes. Sierra Maestra reiteró que su reclamo iba dirigido a que las demandadas ocupaban más de los 1,000 metros cuadrados de su predio, por lo que se precisaba un deslinde.[5] Por consiguiente, la cuestión a dirimir consistía en establecer la demarcación territorial de las colindancias y la defensa de usucapión invocada.[6] De las *Minutas* del caso surge que el demandante realizó una mensura de la propiedad; contando con un plano y la ubicación de la estructura comercial sita en la finca de las demandadas.[7] Asimismo, se desprende que las hermanas Candelario Rivera, quienes se negaron a concretar un acuerdo, se disponían a producir un plano de lo que ellas reconocían como su propiedad, pero esto no ocurrió.[8] Por su parte, el TPI realizó una vista ocular.[9]

Trabadas las controversias, el juicio en su fondo se celebró el 19 de febrero de 2025.[10] Las partes estipularon prueba documental[11] y veintisiete aseveraciones fácticas, sobre las cuales descansaron las hermanas Candelario Rivera, quienes no testificaron en la vista. A continuación, reproducimos las **estipulaciones de hechos**:[12]

1. La parte Demandante es dueño de una finca identificada en el Registro de la Propiedad, **finca matriz número 3,323**

---

[5] Apéndice, págs. 25-26.

[6] Apéndice, pág. 27.

[7] Apéndice, págs. 30 y 32.

[8] Véase, entradas 31 y 32 del expediente electrónico AÑ2023CV00103 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[9] Apéndice, pág. 33.

[10] Apéndice, págs. 155-156.

[11] Apéndice, págs. 36-149. La copia de varias piezas de la prueba documental presentada físicamente y archivada en bóveda no fue incluida en el expediente que revisamos; a saber, los Exhibits 7 y 8, correspondientes a las transcripciones de las deposiciones realizadas a las hermanas Luz Delia y Providencia, respectivamente; y el Exhibit 3, Plano de Replanteo de Solar de 1,000 metros cuadrados pertenecientes a las demandadas, preparado por el Ing. Humberto Rivera Ayala. Véase, anejo de la entrada 47 del SUMAC, *Registro General de Evidencia Presentada.*

[12] Apéndice, págs. 157-159. Del expediente electrónico y los autos ante nos se desprende que el 19 de febrero de 2025 se sometieron dos exhibits correspondientes a la prueba documental de la parte demandada, referentes a una foto parcial de la vivienda original y una impresión de la página web del catastro digital. Cabe señalar que estos documentos no surgen del *Registro General de Evidencia Presentada.* Incluso, el dictamen impugnado consigna que "[l]a parte demandada descansó su prueba en las estipulaciones previamente consignadas". Véase, entrada 43 y el anejo de la entrada 47 del SUMAC, así como el Apéndice, págs. 5 y 150-152.

inscrita al folio 110 del tomo 106 de Añasco, finca que fue agrupada e identificada actualmente bajo el número 11,024, inscrita al folio 1 del tomo 54 de Añasco. Dicha finca tiene actualmente una cabida aproximada de 25.49 cuerdas.

2. **La parte Demandada son las herederas** de quien en vida fue Carmen Rivera Vega a nombre de quien aparece inscrita en el Registro de la Propiedad una **finca número 3,334** al folio 206 del tomo 106 de Añasco, sección I de Mayagüez.

3. Que la descripción registral de la finca antes descrita aparece como:

---RÚSTICA: Parcela radicada en el Barrio Caracol y Quebrada Larga del término municipal de Añasco, Puerto Rico con una **cabida superficial de mil metros cuadrados** y en lindes por el NORTE, en 21.40 metros con terreno de finca principal; **por el SUR, en 21.40 metros con los terrenos de la finca principal**; **por el ESTE, en 46.73 metros con terrenos de la finca principal**; y por el OESTE, con 46.73 metros con camino - municipal.------------------------------------------------------------

---**Se segrega de la finca número 3323**, inscrita al folio 110 del tomo 106 de Añasco. (La finca número 3,323 se agrupó con otra para formar la finca matriz 11,024, identificada como Estancias de Sierra Maestra).--------------------------------------

4. La finca antes descrita fue adquirida por Doña Carmen Rivera Vega siendo esta viuda mediante **compraventa** de la Sucesión Ramírez de Arellano por la suma de $1,500.00 mediante la escritura número 344 del **20 de agosto de 1969** ante el notario Carlos García Méndez otorgada en Mayagüez, Puerto Rico.

5. De esa finca matriz número 3,323, también se segregaron otros predios de terreno que se identificaron como la finca 3,338 y 3,986 consistente de dos parcelas de terreno de 6,560 m/c cada una identificadas como solar 1 y 2, además de otro predio a dedicarse a uso público las cuales fueron vendidas originalmente la número 1 a favor de la Cervecería Corona Inc. y la número 2 a favor de Mayagüez Warehousing Corporation, éstas con lindes por el NORTE, con José Colón; por el SUR, con Ramírez de Arellano; por el ESTE, con Ramírez de Arellano; y por el OESTE, con uso público. Dicha segregación fue aprobada por la Junta de Planificación el 20 de noviembre de 1970 y vendida el 12 de julio de 1972.

6. La demandada, Luz Delia Candelario Rivera, nació el 9 de marzo de 1942, al presente está próxima a cumplir 83 años y la mayor de las hermanas.

7. La codemandada es hija de Domingo Candelario y Carmen Rivera Vega y a su vez tuvo una hermana llamada Providencia Candelario Rivera.

8. Las demandadas recuerdan haber nacido y vivido en el Barrio Quebrada Larga junto a sus padres.

9. **Luz Delia Candelario Rivera vivió en el mismo lugar hasta que se casó 1963 y se fue a vivir a las Parcelas Marías en Añasco donde todavía reside actualmente**.

10. El terreno donde vivían las demandadas pertenecía a la Sucn. Ramírez de Arellano.

11. Luz D. Candelario recuerda que el Sr. Ramírez de Arellano tenía esa finca sembrada de caña y que iba a ver e inspeccionar dicha finca con frecuencia.

12. **La casa donde se criaron las Demandadas estaba ubicada en la finca de los Ramírez de Arellano conocida como "Finca El Faro"**.

13. El **padre de las Demandadas** trabajó como carretero de bueyes que se utilizaba para transportar la caña y posteriormente **tuvo un colmadito "o tienda" de víveres contiguo a la residencia**.

14. La codemandada, Luz D. Candelario, recuerda que **frente a la casa y a la tiendita existía un camino vecinal** que venía de la montaña y bajaba hasta la variante.

15. La codemandada, Luz Delia recuerda que **el Sr. Ramírez de Arellano se paraba frente a la casa y la tienda, en el camino vecinal**, desde donde podía ver y apreciar la finca de caña.

16. **En algún momento antes del 1968, el Sr. Ramírez de Arellano le ofreció venderle <u>el predio de terreno que ocupaba</u> el papá de las Codemandadas, Sr. Domingo Candelario**.

17. El Sr. Candelario aceptó la oferta de Ramírez de Arellano y negoció el precio y la forma de pago a plazos.

18. El Sr. Candelario enfermó y en su lecho de muerte le encomendó a la Codemandada Luz D. Candelario Rivera que terminara de pagar el precio acordado por la compra de la finca al Sr. Ramírez de Arellano, para que firmara la escritura, para que no perdieran su propiedad.

19. El Sr. Candelario falleció en 1968.

20. **En 1969 Ramírez de Arellano segregó un <u>predio de terreno de 1,000 metros [cuadrados] donde ubicaba la propiedad de las Codemandadas</u> y otorgó escritura pública de compraventa por el precio de $1,500.00 en donde figura como compradora Carmen Rivera Vega**, madre de las Codemandadas y así consta inscrito en el Registro de la Propiedad.

21. Para esa fecha de 1969 lo que **existía era la tiendita y casa que la siguió operando y viviendo la viuda** y madre de las Codemandadas.

22. **La casita aledaña donde se criaron las Codemandadas fue desocupada y abandonada por lo que se destruyó y desapareció**.

23. Debido a sus condiciones de **salud la viuda y madre de las Codemandadas se fue a vivir con Luz Delia Candelario a su casa en las Parcelas María**, donde permaneció hasta que falleció en el 2008.

24. **Posterior a 1969 la viuda y madre de las Codemandadas autorizó al esposo de Luz Delia para que montara una gomera detrás de lo que fue la tiendita**.

25. **El esposo de Luz Delia, Sr. Aníbal Ruiz, poco a poco, fue construyendo un local comercial que es la estructura que existe hoy en día y una estructura encima del pozo séptico**.

26. Al presente la propiedad de las Codemandadas ha sido **utilizada para fines comerciales**, nunca para fines residenciales.

27. **Registralmente la finca de las Codemandadas colinda con el Demandante por el lado NORTE, SUR y ESTE**. (Énfasis nuestro).

A favor de la postura de Sierra Maestra, testificó el perito en ingeniería y agrimensura Humberto Rivera Ayala, quien preparó un plano y sometió un breve informe. En torno a su testimonio y las declaraciones de las hermanas Candelario Rivera realizadas en sendas deposiciones, el TPI consignó las siguientes **determinaciones de hechos**:[13]

1. El Ing. Humberto Rivera (en adelante el Ingeniero) trabajó en la Junta de Planificación y en ARPE por alrededor de 20 años.

2. El Ingeniero se graduó de Ingeniería Civil y Agrimensor en 1969 con licencia núm. 5898 de PE y RPA.

3. Desde 1989 al presente el Ingeniero trabaja en su oficina privada como consultor en Ingeniería y Agrimensura.

4. Desde 1991 el Ingeniero conoce la "Finca El Faro" ya que fue contratado por la Demandante para preparar y presentar una consulta de ubicación para una Urbanización ante la Junta de Planificación.

5. De esa fecha al presente **el Ingeniero ha mesurado o medido dicha "Finca El Faro" al menos en 3 ocasiones**.

6. Para realizar ese trabajo de consulta de ubicación**, el Ingeniero realizó una extensa investigación del historial de la finca** obteniendo planos, escrituras y testimonios de colindantes para poder identificar los linderos de dicha finca.

7. En ese proceso, el Ingeniero obtuvo un **"plano" o "croquis"** que figuraba en los expedientes de la antigua "ARPE" (Exh. 1) en **donde aparece ubicado el solar de 1,000 metros [cuadrados]** a segregar al Sr. Domingo Candelario de la "Finca El Faro" propiedad para ese entonces de la Sucesión Ramírez de Arellano.

8. **En este "plano" ese solar de 1,000 metros [cuadrados] aparece colindando por el Oeste con un camino vecinal** y los demás puntos cardinales colinda con la finca principal ("El Faro"), tal y como aparece descrita actualmente en el Registro de la Propiedad.

9. En ese plano **la finca a segregarse aparece ubicada de frente al camino vecinal**, pero en ángulo hacia la Carretera #2.

10. El Ingeniero también obtuvo un **segundo plano** de 1994 de la Autoridad de Carretera (Exh. 2) **donde ubica el solar de 1,000 metros [cuadrados]** de las Codemandadas en ángulo con la Carr. #2, colindante con la "Finca El Faro" y **ocupando parte del área o terreno destinado a uso público**.

11. **Del punto más al Sur de esos 1,000 metros [cuadrados] del solar de las codemandadas a la colindancia del solar identificado como el de la "Seven-Up", existen 20 metros**

---

[13] Apéndice, págs. 143-144; en cuanto a las deposiciones y el Plano de Replanteo de Solar de 1,000 metros cuadrados pertenecientes a las demandadas, véase nota al calce 10 de este dictamen.

**[lineales] de distancia que pertenecen a la "Finca El Faro" del aquí Demandante**.

12. **Esos 20 metros [lineales] son de frente con la carretera marginal y se desplazan desde la colindancia sur de la verja de la "Seven-Up" hasta el norte con la colindancia de los 1,000 metros [cuadrados] de la propiedad de las Codemandadas**.

13. **De la inspección ocular no se pudo constatar rastros ni señales de la ubicación de la vivienda que las Codemandadas alegan una vez existió**.

14. La codemandada, Luz D. Candelario Rivera no pudo precisar (por no recordar) cuándo se construyó la casita donde ella se crió. (Exh. 7, pág. 20 línea 12 y 13).

15. Dicha codemandada estableció **que el negocio o colmado que tenía el Papá estaba al lado de la casa y lo que la separaba era un escalón que había que bajar para llegar a la casa**. (Exh. 7, pág. 23 línea 11-12, pág. 90 línea 18-19).

16. **Detrás del negocio / colmado se construyó un rancho donde operaba una gomera propiedad del esposo de Luz Delia y autorizado por la madre de ésta**. (Exh. 7, pág. 25 línea 1-3).

17. Luz Delia recuerda que el camino vecinal pasaba por el frente del negocio de su [p]apá y seguía hacia abajo. (Exh. 7, pág. 44 línea 3-12).

18. Luz Delia recuerda cuándo construyeron la ampliación de la Carretera #2 a cuatro carriles y en la construcción se llevaron el frente del negocio de su papá. (Exh. 7, pág. 38 línea 1-9).

19. La testigo declaró que el Gobierno no le [dio] compensación alguna por concepto de expropiación porque el terreno donde se construyó era del Gobierno. (Exh. 7, pág. 39 línea 8-21).

20. La testigo identificó que los 1,000 metros [cuadrados] que pertenecían a sus padres y que le habían comprado a la Sucn. Ramírez de Arellano estaban desde los escombros del negocio / colmado hacia atrás. (Exh. 7, pág. 40 línea 1-2).

21. **La Codemandada identificó todo el tiempo que el camino vecinal pasaba por frente a la casa y bajaba hasta llegar a la variante**. (Exh. 7, pág. 42 línea 9 y 10, pág. 43 línea 21 y 22, pág. 75 línea 13-17, pág. 91 línea 10).

22. La Codemandada conocía a Ubaldino Ramírez de Arellano, como el señor que le vendió a su madre los 1,000 metros [cuadrados] de terreno, porque él iba a ver su finca y se paraba frente al negocio de su papá a mirar la siembra de caña de su propiedad. (Exh. 7, pág. 61 línea 10-22).

23. **Ese Sr. Ramírez de Arellano le ofreció al papá de las Codemandadas venderle el <u>predio de terreno que estaban ocupando</u>**. (Exh. 7, pág. 63 línea 22 y 23).

24. Los únicos que pudieron negociar y comprarle a los Ramírez de Arellano los predios de terreno que ocupaban fueron el papá de las Codemandadas y un vecino llamado Carlos Crespo. (Exh. 7, pág. 64 línea 1-8).

25. Luz Delia reconoce que su familia vivía en la finca de los Ramírez de Arellano como "arrimaos", término que se utilizaba para denominar a los invasores o edificantes de mala fe. (Exh. 7, pág. 64 línea 23).

26. Cuando falleció el [p]apá de las Codemandadas todavía no habían terminado de pagar el total del precio acordado por la compra de los 1,000 metros [cuadrados] a la Sucn. Ramírez de Arellano. (Exh. 7, pág. 65 línea 12-14).

27. Posterior a la muerte del papá, la mamá culminó el negocio de compraventa pagando el dinero que aún se debía y comprando mediante escritura pública el predio de 1,000 metros [cuadrados] (Exh. 7, pág. 66 línea 15-19).

28. **El predio de 1,000 metros [cuadrados] que figura a nombre de la madre de las Codemandadas y obtenido mediante compraventa a la Sucn. Ramírez de Arellano es donde <u>estaba ubicada la propiedad</u> que pertenecía a los padres de éstas**. (Exh. 7, pág. 67 línea 11-22).

29. Luz Delia recuerda que la "Finca El Faro" que pertenecía a los Ramírez de Arellano colindaba por el norte con José Colón. (Exh. 7, pág. 82 línea 6-11).

30. **La edificación comercial que existe actualmente se construyó con posterioridad a la compraventa de los 1,000 metros [cuadrados] y fue construido por Aníbal Ruiz esposo de Luz Delia**. (Exh. 7, pág. 31 línea 1-19).

31. **Años después de que operara la gomera, se fue construyendo poco a poco por el Sr. Aníbal Ruiz el edificio comercial que hoy existe**. (Exh. 7, pág. 33 línea 18-22).

32. **La Codemandada Providencia Candelario Rivera también confirmó que el camino vecinal pasaba por el mismo frente del negocio de su padre** en dirección hacia adentro de la finca. (Exh. 8, pág. 33 línea 17-18, pág. 34 línea 4, también línea 11-15).

Al tenor de lo anterior, el TPI concluyó que, a partir de las declaraciones de las hermanas Candelario Rivera en las respectivas deposiciones, la defensa de usucapión no podía prosperar. En particular, justipreció que las demandadas no pudieron precisar la ubicación exacta de la residencia de sus padres hoy desaparecida. Resaltó también que ambas hermanas reconocieron la titularidad del vendedor del predio de 1,000 metros cuadrados adquirido por su madre en 1969; y que ninguna de ellas había residido la propiedad en concepto de dueña. Estableció que había sido el esposo de Luz Delia, el Sr. Aníbal Ruiz, quien en el transcurso del tiempo edificó la estructura comercial existente. Coligió que la franja de terreno de 20 metros lineales pertenecía a Sierra Maestra, según las constancias registrales. A esos efectos, declaró con lugar la *Demanda* y reconoció la titularidad de Sierra Maestra sobre el predio de terreno en controversia.

Insatisfechas, las hermanas Candelario Rivera instaron oportunamente el recurso del título y señalaron la comisión de los siguientes errores:

> Erró el Honorable Tribunal al declarar CON LUGAR la Demanda y adjudicar la titularidad del predio en controversia a la DEMANDANTE-RECURRIDA, al no validar la aplicabilidad de la doctrina de usucapión levantada sobre el mismo por las DEMANDADAS-RECURRENTES.
>
> Erró el Honorable Tribunal al emitir Sentencia declarando CON LUGAR la Demanda adjudicar la titularidad del predio en controversia a la DEMANDANTE-RECURRIDA, sin adjudicar ni aplicar válidamente y conforme a derecho tanto la acción de deslinde y como la reivindicatoria.
>
> Erró el Honorable Tribunal al declarar CON LUGAR la Demanda en ausencia de prueba en sustento de las alegaciones de la DEMANDANTE-RECURRIDA en cuanto a supuestas construcciones extralimitadas, al no establecerse o delimitarse claramente las colindancias.

En cumplimiento de nuestra *Resolución* de 16 de junio de 2025, Sierra Maestra presentó un breve *Alegato en oposición a recurso de apelación* el 4 de agosto de 2025. Con el beneficio de ambas posturas, procedemos a resolver.

**II.**

**A.**

El Código Civil de 2020, 31 LPRA sec. 5311 *et seq.*, regula la acción de deslinde. Véanse, Arts. 828 al 831, 31 LPRA secs. 8111-8137. Mediante esta acción, se pueden **determinar los linderos confundidos de dos predios colindantes**. *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142, 157 (2006). El Art. 830 del Código Civil, 31 LPRA sec. 8133, establece que "[e]l propietario tiene derecho a deslindar y a amojonar su predio, con citación de los dueños de los predios colindantes". La acción es imprescriptible. Art. 831 del Cód. Civil, 31 LPRA sec. 8134.

Conforme nuestro ordenamiento jurídico, la acción de deslinde se distingue por individualizar los inmuebles, sin determinar quién es su dueño ni auscultar la validez o la eficacia de los títulos. *Ramírez Quiñones v. Soto Padilla, supra,* pág. 159. Por ello, resulta harto conocido que **la sentencia de deslinde sólo tiene el efecto de precisar las colindancias**

**de las heredades contiguas; y no da ni quita derechos**. *Ramírez Quiñones v. Soto Padilla, supra,* pág. 158; *Zayas v. Autoridad de Tierras,* 73 DPR 897, 901 (1952); *La O v. Rodríguez,* 28 DPR 636, 638 (1920). Al realizar un deslinde, éste "**puede efectuarse por cualquier procedimiento técnico de agrimensura**...". (Énfasis nuestro). Art. 832 del Cód. Civil, 31 LPRA sec. 8135. "A falta de títulos suficientes, el deslinde puede efectuarse por lo que resulta de la posesión en que estén los colindantes". *Id.*

De otro lado, a través de la reivindicación, se pretende la protección del dominio. *Ramírez Quiñones v. Soto Padilla, supra,* pág. 157. A diferencia del deslinde**, el tribunal debe examinar la validez o eficacia de los títulos**. Las acciones de deslinde y de reivindicación pueden ser acumuladas o instadas sucesivamente. *Id.,* pág. 159.

En los casos de reivindicación, "[e]l propietario que no posee puede ejercitar la acción reivindicatoria contra el poseedor que frente a él no puede alegar derecho que justifique su posesión". Art. 820 del Cód. Civil, 31 LPRA sec. 8101. Implica también probar su título, ya que no puede descansar únicamente en los vicios que tenga el título del demandado. *Ramírez Quiñones v. Soto Padilla, supra*; *Castrillo v. Maldonado,* 95 DPR 885, 891-892 (1968). Por consiguiente, los requisitos para reivindicar son: "(a) el justo título de propiedad del demandante; (b) que la acción se dirija contra quien tiene la cosa en su poder; (c) falta de título del poseedor no propietario que permita seguir en la posesión; y (d) la identificación precisa de la cosa cuya restitución se solicita". Art. 821 del Cód. Civil, 31 LPRA sec. 8102. Véase, *Pérez Cruz v. Fernández,* 101 DPR 365, 374 (1973); *Amy et al. v. Amy et al.,* 15 DPR 415, 434 (1909). Esto es, "*la finca que reclama es la misma a que se refieren los documentos que dicha parte presente en evidencia para acreditar su justo título de dominio*". (Bastardillas en el original). *Pérez Cruz v. Fernández, supra.* Por virtud de lo anterior, "una sentencia reivindicatoria declara el derecho dominical del demandante y ordena que el demandado le entregue la posesión del objeto". *Ramírez Quiñones v. Soto Padilla, supra,* pág. 158.

**B.**

El ordenamiento jurídico vigente a los hechos atinentes, Código Civil de 1930, (derogado) 31 LPRA ant. sec. 1 *et seq.*, también permitía la adquisición de la propiedad y los demás derechos sobre los bienes, a través de la prescripción adquisitiva o usucapión, con o sin justo título y con o sin buena fe.[14] Arts. 549, 1830, 1840 y 1869 del Cód. Civil de 1930, 31 LPRA ants. secs. 1931, 5241, 5261 y 5280; *Adm. Terrenos v. S.L.G. Rivera-Morales*, 187 DPR 15, 26 (2012). **Mediante la figura de la usucapión se adquiere un derecho a favor de una persona, mientras se extingue el derecho de otra**. *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 DPR 550, 554 (1987). Siempre que el objeto o el derecho sea susceptible de apropiación por un tiempo determinado, según las condiciones que dicta la ley, el efecto de la usucapión constituye la adquisición del dominio. *Adm. Terrenos v. S.L.G. Rivera-Morales, supra*; *Bravman, González v. Consejo Titulares*, 183 DPR 827, 838 (2011).

En lo que compete a este caso, la doctrina civilista reconoce la usucapión extraordinaria. *Adm. Terrenos v. S.L.G. Rivera-Morales, supra*, pág. 27. Si bien la prescripción adquisitiva extraordinaria prescinde de la buena fe y el justo título, exigía como requisitos **la posesión ininterrumpida, pública, pacífica y en concepto de dueño, durante al menos treinta años**. Arts. 1841 y 1859 del Cód. Civil de 1930, 31 LPRA ants. secs. 5262 y 5280*; Sánchez González v. Registrador*, 106 DPR 361, 375. Salvo las excepciones establecidas por el ordenamiento, la usucapión extraordinaria puede perfeccionarse incluso contra un título inscrito. *Adm. Terrenos v. S.L.G. Rivera-Morales, supra*, pág. 30. Así, pues, en *Dávila v. Córdova, infra*, nuestro Tribunal Supremo acotó:

> Conclusión: para que se produzca la prescripción adquisitiva extraordinaria que establece el [A]rt. 1859 del Código Civil de Puerto Rico [de 1930], deben exigir nuestros tribunales de justicia la prueba de los siguientes hechos: (1) una **posesión continuada durante treinta años** sobre el inmueble, (2) por

---

[14] Como medida de transición, el Artículo 1814 del Código Civil de 2020 dispone en lo pertinente que los términos de usucapión que estuvieren transcurriendo al 28 de noviembre de 2020, cuando entró en vigor, tienen la duración dispuesta en la legislación anterior. 31 LPRA sec. 11719.

haberla así **tolerado el dueño** del inmueble, (3) ya que el **prescribiente ha entrado en posesión del inmueble sin autorización, permiso o licencia** otorgados por el dueño o en virtud de contrato celebrado con el dueño, (4) cuya posesión ha mantenido el poseedor en **concepto público de dueño, de acuerdo con la creencia colectiva de la comunidad en que vive**, no en virtud de la creencia propia que pueda tener el poseedor de ser el dueño del inmueble poseído, y (5) cuya **posesión resulte además pública, pacífica**, y (6) **sin que se haya interrumpido** naturalmente, o sea, por abandono de la cosa por el poseedor, por más de un año, o civilmente, en virtud de diligencia judicial o notarial, o **por un reconocimiento expreso o tácito del derecho del dueño hecho por el poseedor, antes de haber transcurrido los treinta años durante los cuales se consuma la prescripción**, y (7) **sin que el poseedor haya renunciado** expresa o tácitamente a su título por prescripción por alguna causa que resulte eficaz en derecho para tal renuncia, después de consumada la prescripción extraordinaria. *Dávila v. Córdova*, 77 DPR 136, 150-151 (1954); refrendado en *Adm. Terrenos v. S.L.G. Rivera-Morales*, *supra*, págs. 28-29. (Énfasis nuestro).

Finalmente, es sabido que el tipo de posesión que se exige para poder adquirir el dominio de un bien inmueble mediante la prescripción adquisitiva ordinaria o extraordinaria es la **posesión civil**. *Adm. Terrenos v. S.L.G. Rivera-Morales*, *supra*, pág. 29. El Art. 360 del Código Civil de 1930, 31 LPRA ant. sec. 1421, definía la "posesión civil" como la **tenencia** de una cosa y el **disfrute** de un derecho, unido a la **intención** de hacer suya la cosa o el derecho.[15]

**III.**

Las hermanas Candelario Rivera sostienen que el TPI incidió al adjudicar la titularidad del predio en controversia a Sierra Maestra y no reconocer la defensa de usucapión invocada. Alegan que el TPI se equivocó en la aplicación del derecho al justipreciar las acciones de deslinde y reivindicación, incurriendo en error al avalar las alegaciones del recurrido sobre la construcción extralimitada.

Al argumentar, exponen que Sierra Maestra no convocó a todos los titulares colindantes para ejercer la acción de deslinde. Aducen que el dictamen en su contra tampoco delimita con precisión las colindancias y la cabida del predio, por lo que concluyen que no se desprende con certeza a

---

[15] Idéntica definición se acoge en el Art. 704 del Código Civil, 31 LPRA sec. 7822.

cuánto corresponde el área superficial del predio en disputa, en alusión a la franja de 20 metros lineales. Razonan, entonces, que estas deficiencias impiden el curso de la acción reivindicatoria; y añaden que dicho predio fue adquirido por virtud de la prescripción adquisitiva. Ello así, ya que afirman que, desde 1969, ha sido poseído en concepto de dueñas por las peticionarias de manera pública, pacífica e ininterrumpida. Explican que su madre adquirió por compraventa en 1969 el solar de 1,000 metros cuadrados *contiguo a su residencia y colmado*. Luego, en 1972, cuando se vendió un predio segregado a la Seven-Up, las peticionarias sostienen que fueron quienes, durante alrededor de cincuenta años, poseyeron, en concepto de dueñas, *todo el terreno que colinda con el solar de la Seven-Up*, en referencia a la franja de terreno entre la verja de la refresquera y el predio comprado en 1969 y que es parte de lo que reclama Sierra Maestra mediante la acción reivindicatoria. Por ello, manifiestan que el TPI erró al colegir que no operó la prescripción adquisitiva extraordinaria por el mero hecho que las peticionarias ni su madre residieron en el lugar, haciendo abstracción de que construyeron estructuras comerciales en el solar, lo cercaron, acondicionaron y lo utilizan como estacionamiento y almacén.

Por otra parte, Sierra Maestra resalta que las peticionarias omitieron someter prueba documental, en particular, las transcripciones de las deposiciones de ambas hermanas. Asevera que esta omisión repercute en el impedimento de rebatir las determinaciones fácticas consignadas por el TPI. Añade que a las peticionarias les correspondía el peso de la prueba para demostrar que, en efecto, adquirieron por virtud de la prescripción adquisitiva extraordinaria el predio en controversia.

Al respecto, el recurrido afirma que, a diferencia de las peticionarias, su testigo perito demostró, con planos de la época, que la propiedad de los progenitores de las hermanas Candelario Rivera estaba ubicada en el mismo predio que luego la familia adquirió por compraventa; no contigua a éste como se alega. Sierra Maestra sostuvo también que no se aportó prueba suficiente para rebatir su justo título.

Como cuestión de umbral, debemos enfatizar que las peticionarias omitieron someter prueba documental y testifical, en referencia a los planos de mensura, las transcripciones de las deposiciones de las hermanas Candelario Rivera, el testimonio del ingeniero Rivera Ayala y la prueba pericial vertida en el juicio. Como resultado, acogemos de manera íntegra las estipulaciones y las determinaciones de hechos esbozadas en el dictamen impugnado. Así, pues, al igual que las peticionarias, discutimos en conjunto los errores señalados.

Con relación a la falta de citación de otros colindantes, lo cierto es que la acción de deslinde se limita a **determinar los linderos de dos predios colindantes que se encuentran confundidos**. En este caso, Sierra Maestra sólo alegó en su *Demanda* el dominio de una porción ocupada exclusivamente por las peticionarias. Estimamos que, al no existir controversia con el resto de los linderos ni reclamaciones por construcciones extralimitadas contra otros vecinos, no era necesario convocarlos al proceso. Además, el deslinde del presente caso estaba subsumido en una acción de reivindicación, específicamente en contra las peticionarias, con relación a un predio en el que Sierra Maestra alegó y probó la construcción extralimitada sobre parte de su propiedad, por lo cual reclamó una compensación dineraria.

En cuanto a la defensa de usucapión, las hermanas Candelario Rivera estipularon que su padre aceptó comprar "**el predio de terreno que ocupaba**" (Énfasis nuestro, Estipulación 16) con una tienda de víveres y la residencia familiar, separados apenas por un escalón. A su vez, las partes acordaron el hecho que, en 1969, la madre de las peticionarias compró un predio de terreno de 1,000 metros cuadrados "**donde ubicaba la propiedad**" (Énfasis nuestro, Estipulación 20). A base de lo anterior y el testimonio pericial del ingeniero Rivera Ayala creído por el juzgador, el TPI determinó probado que el dueño de la finca El Faro ofreció vender "**el predio de terreno que estaban ocupando**" (Énfasis nuestro, Determinación de Hechos 23); y en 1969, la madre de las peticionarias compró el solar de

1,000 metros cuadrados "**donde estaba <u>ubicada</u> la propiedad**". (Énfasis nuestro, Determinación de Hechos 28). Por consiguiente, el TPI concluyó que **la propiedad comprada** "**mediante escritura pública es la que actualmente ocupan y que siempre han ocupado**".[16] Ciertamente, el terreno obtenido mediante compraventa correspondía al predio donde, en el pasado, estuvieron sitos la residencia y el colmado de la familia Candelario Rivera. Estas estructuras no estaban en el predio *contiguo* como se aduce en el recurso. En torno a esto, luego de la vista ocular, el TPI afirmó que sólo existía el piso del colmado y que éste, en efecto, se encontraba dentro del solar de 1,000 metros cuadrados. Acerca de la residencia —de la cual no queda rastro— se confirmó que estaba separada de la tienda solamente por un escalón. Las peticionarias no lograron precisar su ubicación.

Ahora, la contención de las hermanas Candelario Rivera radica en las expresiones del TPI de que éstas no residían en el predio en controversia. Indican que el TPI no consideró que, ante la percepción general, han poseído el predio en concepto de dueñas, de manera ininterrumpida, pública y pacíficamente durante décadas, aunque con fines comerciales. No nos persuaden.

Primero, el TPI consignó como probado que, según el *croquis* de ARPE, la parcela de 1,000 metros cuadrados colindaba por el Oeste con el **camino vecinal**, tal como consta en las instancias registrales.[17] De hecho, el solar segregado y comprado en 1969 se ubica en ángulo y de frente a dicho camino vecinal.[18] Ambas peticionarias recordaban que el aludido camino vecinal pasaba por el frente de la casa y el negocio de sus padres.[19] Es decir, las peticionarias han reconocido que esta parte de la franja lineal en controversia nunca ha sido parte de su patrimonio. Por consiguiente, no han ejercido una posesión civil en concepto de dueñas. Ello así, porque "sólo la posesión que se adquiere y se disfruta en concepto de dueño puede servir

---

[16] Véase, Apéndice, pág. 11.
[17] Apéndice, pág. 141.
[18] Apéndice, págs. 145, 147, 152.
[19] Refiérase a las determinaciones de hechos 8, 9, 17, 21 y 32.

de título para adquirir el dominio". *Bravman, González v. Consejo Titulares*, 183 DPR 827, 839 (2011), que cita a J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1989, T. III, Vol. I, pág. 318.

Segundo, según constan en las aseveraciones estipuladas entre las partes y las esbozadas por el TPI, luego de la compraventa del solar de 1,000 metros cuadrados, la viuda y madre de las peticionarias autorizó al esposo de Luz Delia para que erigiera una gomera detrás de lo que fue la tiendita. (Estipulación 24 y Determinación de Hechos 16). Entonces, el Sr. Aníbal Ruiz construyó un local comercial, correspondiente a la estructura que existe en el presente. (Estipulaciones 24 y 25 y Determinaciones de Hechos 16, 30 y 31). Nótese que estas aseveraciones no han sido controvertidas ni se ha ofrecido evidencia que las cuestione. Por ende, ha sido el Sr. Aníbal Ruiz quien ha estado ocupando y construyendo extralimitadamente detrás del predio que heredaron las peticionarias y sobre el camino vecinal junto a la refresquera. Es sabido que "**los actos posesorios que se ejercitan en representación o a nombre de otro son ineficaces para adquirir el dominio por prescripción extraordinaria, porque no se ejercitan para sí**". (Énfasis nuestro). *Vélez Cordero v. Medina*, 99 DPR 113, 119 (1970). En ese sentido, nuestro Tribunal Supremo ha pautado que:

> ...es doctrina firmemente establecida en el derecho civil que, como norma general, todos los que poseen en nombre o en representación de otro no pueden adquirir el dominio poseído por ellos, ni ningún otro derecho, por virtud de la prescripción ordinaria o extraordinaria. *Bravman, González v. Consejo Titulares, supra*, págs. 839-840 y la jurisprudencia allí citada.

En estos casos, en realidad, estamos ante un precarista.[20] *Id.*, pág. 840. Por lo anterior, es forzoso colegir que la figura de usucapión no puede operar en este caso.

Por último, en cuanto a la falta de delimitación de las colindancias, lo cierto es que con el hecho de rechazar la prescripción adquisitiva invocada por las hermanas Candelario Rivera se reconocieron las constancias

---

[20] Un *precarista* es aquél que posee, retiene o disfruta en precario (posesión sin título) un bien ajeno por tolerancia o inadvertencia del dueño. Véase, I. Rivera García, *Diccionario de términos jurídicos*, 3ra ed. revisada, Ed. LexisNexis, 2000, pág. 204.

registrales de su predio y el de Sierra Maestra. Es decir, la cabida y los límites de la finca de las peticionarias son los que aparecen inscritos y a los que se les ha dado publicidad registral, según rezan en la tercera estipulación de las partes litigantes. Fuera de dichos límites, la franja de terreno al sur y este de su colindancia le pertenece a Sierra Maestra, según surge del expediente.[21] Sin embargo, el área superficial exacta de los 20 metros lineales en controversia (no se especifica el ancho) y su valor no surgen de los autos. Por tanto, refrendadas las constancias registrales de ambas fincas colindantes, es necesario precisar la extensión en metros cuadrados y el valor del predio ocupado y en el que se ha construido de manera extralimitada, con el fin de adjudicar la compensación pecuniaria a favor de Sierra Maestra y finiquitar todas las reclamaciones de la *Demanda*.

**IV.**

Por los fundamentos expuestos, expedimos el auto de *certiorari* y confirmamos el dictamen impugnado. En consecuencia, devolvemos los autos ante la consideración del Tribunal de Primera Instancia, Sala de Añasco, para que celebre una vista evidenciaria, con el propósito de dirimir el área superficial de los 20 metros lineales y la cuantía del pago del terreno sobre el que se construyó de manera extralimitada parte del inmueble comercial.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] Véase, Apéndice, págs. 145 y 152.